IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAELEEN K. MILLER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 04-1070 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

MEMORANDUM ORDER

CONTI, District Judge

*Introduction*

This is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Michaeleen K. Miller ("plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423, *et seq*. Plaintiff contends that the decision of the administrative law judge (the "ALJ") that she is not disabled, and therefore not entitled to benefits, should be reversed because the decision is not supported by substantial evidence and that the case should be remanded for the ALJ to consider properly all the evidence as presented. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will deny plaintiff's motion and grant defendant's motion because the decision of the ALJ is supported by substantial evidence.

*Procedural History*

Plaintiff filed the application at issue in this appeal on a protective basis on March 4, 2002 asserting a disability since April 21, 1999 by reason of fibromyalgia, chronic fatigue, and abdominal pain following cholecystectomy. (R. at 69-72.) She was denied at the initial level (R. at 58-62) and then filed a request for a hearing. (R. at 63-65.) On July 8, 2003, a hearing was held before the ALJ. Plaintiff appeared at the hearing and testified. (R. at 399-424.) Plaintiff was represented by an attorney at the hearing. (R. at 19.) In a decision dated September 24, 2003, the ALJ determined that plaintiff was not disabled and, therefore, not entitled to benefits. (R. at 16-36.) Plaintiff timely requested a review of that determination, and by letter dated June 25, 2004, the Appeals Council denied the request for review. (R. at 6-9.) Plaintiff subsequently commenced the present action seeking judicial review.

*Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F. 3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing

whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

## *Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy" 42 U.S.C. § 1382c (a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. § 404.1520. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents her from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d. Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the ALJ may find that the plaintiff is not disabled. Burns, 312 F.3d at 119. The

Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on April 21, 1999; (2) plaintiff suffers from fibromyalgia, chronic fatigue syndrome, abdominal pain following cholecystectomy, and migraines, which are severe;[1] (3) these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any past relevant work; and (5) there were jobs in the national economy that plaintiff could perform. (R. at 34-35.)

Plaintiff raises five main issues on appeal:

> 1. Whether the ALJ erred in determining that plaintiff's allegations regarding her limitations were not totally credible.
>
> 2. Whether the ALJ erred in determining plaintiff had the residual functional capacity to perform a full range of sedentary work.
>
> 3. Whether the ALJ erred in his analysis of the medical records and opinions of plaintiff's treating physicians.
>
> 4. Whether the ALJ erred in relying on the medical-vocational guidelines.
>
> 5. Whether the ALJ erred in failing to develop properly the record concerning plaintiff's alleged mental health conditions.

The court will address each of these issues in turn.

### *I. Whether the ALJ Erroneously Evaluated Plaintiff's Credibility*

Plaintiff argues that the ALJ erred in determining that her allegations regarding her pain and other limitations were not totally credible as set forth in the body of his decision. Plaintiff contends

---

[1] The ALJ also noted that there was an indication in the record that plaintiff had experienced some depression. He found, however, that the depression was not severe. (R. at 21.)

that the ALJ failed to comply with applicable Social Security regulations as well as Social Security Ruling ("SSR") 96-7p which sets forth guidance for evaluating a claimant's subjective complaints. Plaintiff also argues that the ALJ erred in using her self-reported activities of daily living to discredit her pain complaints. After a review of the relevant law and the record, the court disagrees.

The purpose of SSR 96-7p "is to clarify when the evaluation of symptoms, including pain, under 20 C.F.R. 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain...." SSR 96-7p (Purpose statement). Pursuant to 20 C.F.R. § 404.1529, the Commissioner will consider all "symptoms, including pain," in the disability determination. Statements of pain alone are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p1. Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, then the Commissioner must determine how the pain limits the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1); SSR 96-7p2. In determining the limits on the claimant's capacity for work, the Commissioner will consider evidence from the treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c); SSR 96-7p4. The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. § 404.1529(c)(4).

After a thorough review of the record, the court finds that the ALJ's decision was supported by substantial evidence. The ALJ did not deny that plaintiff had symptoms of pain or that she was unable to return to her previous relevant work as a nurse. The ALJ found, however, that plaintiff's allegations of totally disabling limitations and pain, when considered in accordance with 20 C.F.R. § 404.1529 and SSR 96-7p, were not fully credible and were not consistent with the clinical and objective findings, plaintiff's self-reported activities of daily living, her overall testimony, and the other evidence of record. (R. at 31-35.)

In support of this finding, the ALJ exhaustively reviewed the objective medical evidence of record, including numerous test results and other medical records regarding the severity of plaintiff's condition and functional limitations. For example, the ALJ cited medical records indicating that plaintiff exhibited normal muscle tone, normal joint range of motion, normal strength, and normal deep tendon reflexes. (R. at 22-33.) Other records indicated that plaintiff exhibited normal gait and coordination and that she was able to heel and toe walk. Id. The ALJ also noted that one of plaintiff's attending physicians, Dr. Kathy Burcin, opined in 2000 that plaintiff was able to return to work. (R. at 24, 180, 187.) Another treating physician, Dr. Landfried, indicated that plaintiff had done well with and achieved all her goals in a chronic pain treatment program and that he consequently discharged her from the program after only two months. (R. at 26-27, 267.) The ALJ also pointed to record evidence that plaintiff's symptoms were helped by conservative treatment and medication. (R. at 32-33.)   Thus, contrary to plaintiff's assertions, the ALJ considered plaintiff's symptoms of pain in conjunction with the objective medical evidence to diminish her capacity for work, as required by 20 C.F.R. § 404.1529.

In addition, the ALJ properly examined plaintiff's self-reported activities of daily living as part of his overall evaluation of plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529 and SSR 96-7p. On her Daily Activities Questionnaire, plaintiff reported numerous activities of daily living such as caring for her husband, two children, and an elderly neighbor; cooking; cleaning; doing laundry; shopping; and providing transportation to and from school, activities, and appointments. (R. at 31, 95-107.) Plaintiff also indicated that she can plant some flowers, carry 1-2 light grocery bags, do some crafts, use a touch-tone phone, use a knife and fork, tie her shoes, and fasten buttons, snaps, etc. on clothing. (R. at 31-32.) Plaintiff further testified at the hearing that she does not require or use a cane, brace, or walker. (R. at 31, 406.) Contrary to plaintiff's assertions, this evidence supports the ALJ's finding that plaintiff's subjective complaints of totally debilitating pain were less than fully credible.

Finally, the ALJ noted that the record showed that plaintiff's "accounts of her response to her treatments varied significantly, with the claimant frequently reporting vastly different responses to a given treatment to different doctors." (R. at 32.) For example, the ALJ compared contemporaneous progress notes from plaintiff's treating physicians Dr. Ciambotti and Dr. Wassil and noted that despite a "plethora of complaints" to Dr. Ciambotti, plaintiff made no such complaints to Dr. Wassil and, indeed, that Dr. Wassil's notes indicated that the plaintiff was stable on her treatment regimen, with fairly good functional status. (R. at 29-30.)

The court must defer to the ALJ's credibility determinations, unless they are not supported by substantial evidence. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). Here, the court finds that the ALJ properly evaluated plaintiff's subjective complaints of pain in light of the objective medical evidence, plaintiff's self-reported

activities of daily living, and other relevant criteria. Because plaintiff's statements concerning her pain and its impact on her ability to work were inconsistent with this evidence, this court does not find any error on this issue.

## *II. Whether Plaintiff Had the Residual Functional Capacity to Perform Sedentary Work*

The ALJ determined as part of the sequential evaluation process that plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work. Plaintiff argues that the ALJ's RFC finding is not supported by the medical evidence. Specifically, plaintiff contends that the ALJ failed to consider her fatigue and depression, as well as her pain, her migraines, and the weakness in her hands. This argument is without merit.

Sedentary work involves lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Sedentary jobs require mostly sitting with occasional walking and standing to carry out job duties. 20 C.F.R. § 404.1567(a). The responsibility for deciding a claimant's RFC rests with the ALJ and is based on the entire record. 20 C.F.R. § 404.1545, .1546.

Here, as noted above, the objective medical evidence does not establish physiological or psychological abnormalities that would preclude plaintiff from all types of work activity. To the contrary, the medical evidence indicates that plaintiff was not limited in her ability to perform the requirements of sedentary work. (R. at 32-33.) Indeed, more than one of plaintiff's doctors opined that she was able to work. (R. at 23-24, 130, 179-80.)

Furthermore, plaintiff's assertion that the ALJ failed to consider her pain complaints, fatigue, depression, migraines, and hand weakness is incorrect. To the contrary, the ALJ specifically addressed all of these items. As set forth above, the ALJ considered plaintiff's complaints of pain

and properly concluded that those complaints were not fully credible and did not limit plaintiff's ability to perform sedentary work. As discussed more fully below, the ALJ also considered plaintiff's depression and properly concluded that her depression was non-severe and did not result in functional work limitations. (R. at 21-22.)[2] With respect to plaintiff's migraines, the ALJ concluded that her complaints were "intermittent at best" and that plaintiff herself had testified that her migraine medication was effective in limiting the severity of her headaches. (R. at 31, 33.) Regarding plaintiff's hand weakness, the ALJ again pointed to plaintiff's testimony that, among other things, she can use her right hand to grip and can lift and carry up to ten pounds. (R. at 31.) The ALJ also noted plaintiff's complaints of fatigue and sleep problems, but determined that those problems did not impact her ability to perform sedentary work. (R. at 33.)

In short, the court agrees with defendant that the ALJ based his RFC assessment on the record evidence which included physician opinions that plaintiff could work; a history of conservative treatment; unremarkable clinical findings; and the performance of an array of activities by plaintiff. Because substantial evidence exists in the record to support the ALJ's conclusion that plaintiff's alleged impairments did not limit her ability to perform the full range of sedentary work, the court finds no error on this issue.

### III. *Analysis of Medical Records*

Plaintiff argues that the ALJ erred in his analysis of the medical records and the opinions of her treating physicians because he "selectively picked and chose" portions of the medical evidence to support his decision, while disregarding portions that supported plaintiff's claim. Specifically,

---

[2] The ALJ considered plaintiff's depression even though she did not allege disability due to depression in her Social Security application. (R. at 21.)

plaintiff argues that the ALJ improperly rejected the opinions of consultative examiner Dr. Yarboro and treating physicians Dr. Wassil and Dr. Burcin, all of whom, according to plaintiff, found plaintiff to be "debilitated and/or incapable of working." Pl.'s Br. at 15-19. This argument is without merit.

### *Dr. Yarboro*

Dr. Theodore Yarboro examined plaintiff in May 2002. (R. at 309-18.) He served not as a treating physician, but as a consultative examiner. In a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities, Dr. Yarboro opined that plaintiff could lift 2-3 pounds occasionally, could carry 2-3 pounds occasionally, could stand 1-2 hours or less in an 8 hour workday, could sit 1-2 hours, was limited in pushing and pulling, and had a number of postural and environmental limitations. (R. 317-18.)

The ALJ did not err in rejecting Dr. Yarboro's conclusion that plaintiff had a very limited ability to perform work-related functions. (R. at 28.) An ALJ can reject a treating physician's opinion, and thus obviously a consultative examiner's opinion as well, where the opinion is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record. 20 CFR § 404.1527(d)(2). Here, the ALJ's conclusion that Dr. Yarboro's decision was not well supported and was inconsistent with other evidence, is supported by substantial evidence of record.

For instance, the ALJ noted that Dr. Yarboro himself concluded that on physical examination, plaintiff had no problems with ambulation and had no problems getting up and down from a chair. (R. at 310-11.) Dr. Yarboro's report also indicated that plaintiff's extremities showed no swelling and no atrophy. Muscle power was only slightly decreased, deep tendon reflexes were slightly increased, and sensation was intact. Id. Range of motion in the upper extremities, including

shoulders, elbows, wrists, and thumb, was full and normal bilaterally. (R. at 313-16.) Grip strength was good bilaterally. (R. at 315.) Lumbar range of motion was only slightly decreased, and hip range of motion was full and normal bilaterally, except for a slight decrease in forward flexion. (R. at 314.) These inconsistencies between Dr. Yarboro's objective findings and his conclusion that plaintiff is limited to less than sedentary activities support the ALJ's rejection of that conclusion.

Further, Dr. Yarboro's conclusions are at odds with much of the other medical evidence of record, as set forth more fully elsewhere in this opinion and in the ALJ's extensive analysis in his written opinion. (R. at 22-30.) The findings of a treating physician are entitled to more deference than the findings of a consultative examiner. Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994).

For all of these reasons, the ALJ did not err in concluding that Dr. Yarboro's functional assessment of plaintiff was not supported by the objective medical findings and, thus, was not entitled to great weight.

### *Drs. Burcin and Wassil*

There also is no merit to plaintiff's argument that the ALJ improperly reviewed the medical opinions of Dr. Burcin and Dr. Wassil. To the contrary, the ALJ extensively analyzed both doctors' records in his written opinion. (R. at 24, 29-30.) Although Dr. Burcin initially was unsure about plaintiff's return-to-work status, she never opined that plaintiff was permanently unable to work in any job. (R. at 180, 187.) Indeed, Dr. Burcin opined on February 12, 2000, that plaintiff could work based on the job description provided to her, and noted that plaintiff's GI work-up (performed by a GI specialist) was negative. Id.

The ALJ also properly reviewed Dr. Wassil's notes and records. Although in the last treatment notes contained in the record (dated May and August 2003), Dr. Wassil indicated that he

felt plaintiff was disabled from work activities, the ALJ properly rejected this statement as inconsistent with Dr. Wassil's other findings. As set forth above, an ALJ can reject a treating physician's opinion where the opinion is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2).

In a thorough analysis, the ALJ in this case found that Dr. Wassil's conclusions regarding plaintiff's ability to work were not controlling for a number of reasons. With respect to the May 2003 notes, the ALJ indicated that Dr. Wassil's conclusion that plaintiff was disabled conflicted with, and was refuted by, the remainder of his notes which showed that previously positive physical examination results remained unchanged and that plaintiff was independent with activities of daily living and home tasks. (R. at 30, 360.) The ALJ also pointed out that Dr. Wassil changed nothing in plaintiff's treatment regimen. Id. In light of these inconsistencies, the ALJ concluded that Dr. Wassil's assessment appeared to be based entirely on plaintiff's subjective reports. As set forth above, the ALJ also rightly found that plaintiff's subjective complaints were inconsistent with the medical evidence and her self-reported activities of daily living.

With respect to Dr. Wassil's August 2003 notes, which indicated a decrease in plaintiff's ability to function with decreased outside activity and work, the ALJ explained that "the mere notation of such, especially in conjunction with Dr. Wassil's earlier progress reports, begs the conclusion that claimant had theretofore been functioning effectively and performing outside activities and work." (R. at 30.) The ALJ also noted that plaintiff had opined to Dr. Wassil that her August 2003 problems were weather related. (R. at 30, 359.) In addition, while physical examination indicated some increase in tenderness/trigger points, range of motion was only limited

in the neck and low back and only to a moderate degree. Id. Dr. Wassil also noted that plaintiff still was able to perform her daily activities and maintain her mobility independently at home. Id.

For all these reasons, the ALJ had more than adequate grounds for rejecting Dr. Wassil's assessment. See, e.g., Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ may legitimately disregard physician's opinion premised on a claimant's own subjective complaints where those complaints have been properly discounted). In short, this is not a case, as plaintiff contends, where the ALJ "picked and chose" only the portions of the treating physicians' opinions that supported his conclusion. Rather, the ALJ carefully examined the whole body of medical evidence and did not err in discounting those conclusions that were not supported by the objective evidence of record.

*IV. Application of Medical Vocational Guidelines*

The ALJ relied on the Medical Vocational Guidelines ("grids") to determine that, given her age, education, work experience, and residual functional capacity for sedentary work, there were a significant number of unskilled jobs in the national economy that plaintiff could perform. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e) (2003). Plaintiff, however, argues that she had numerous nonexertional impairments which render reliance on the grids erroneous. The court disagrees.

As plaintiff notes, full reliance on the "grids" is proper only for purely exertional impairments. Sykes v. Apfel, 228 F.3d 259, 267-73 (3d Cir. 2000); Green v. Schweiker, 749 F.2d 1066, 1072 (3d Cir. 1984); Wallace v. Secretary, HHS, 722 F.2d 1150, 1155 (3d Cir. 1983); Burnam v. Schweiker, 682 F.2d 456, 458 (3d Cir. 1982). In this case, however, the ALJ did not find that plaintiff had nonexertional limitations as she alleged; rather, her impairments resulted in only exertional limitations. The nature of the limitation impacts the determination of whether an impairment is treated as exertional or nonexertional.

Limitations are "exertional" if they affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569a. Limitations not affecting a claimant's ability to meet the strength demands of jobs are considered nonexertional. Id. The United States Department of Labor classifies jobs by exertional levels (sedentary, light, medium, heavy, very heavy) in terms of the *strength* demands for sitting, standing, walking, lifting, carrying, pushing and pulling. See 20 C.F.R., pt. 404, subpt. P, app. 2, § 200.00(a); 20 C.F.R. § 404.1569a(a). Although plaintiff alleges that she must lie down during the day and that she maintains a limited ability to sit, stand, walk or carry, as well as an inability to push or pull, the ALJ did not find those allegations fully credible. Moreover, to the extent plaintiff is limited in her ability to sit, stand, walk, carry, push, or pull, those limitations are purely exertional as defined in the regulations. As set forth more fully above, the ALJ did not err in finding that plaintiff's subjective testimony regarding her alleged pain was not supported by the evidence and was not fully credible.

Because there is substantial evidence in the record that plaintiff did not have nonexertional limitations on her abilities, the ALJ did not err in applying the criteria set forth in Medical Vocational Guideline 201.28 to reach a finding of not disabled.

### V. *Failure to Develop Fully Plaintiff's Mental Health Record*

Plaintiff also alleges that the ALJ failed to develop properly the record concerning her mental health conditions, namely depression, in accordance with the procedures set forth in 20 C.F.R. § 404.1520a. Specifically, plaintiff argues that the ALJ had a duty to order a psychiatric evaluation of plaintiff, which he did not do. The court does not agree.

Contrary to plaintiff's assertions, the regulations plaintiff cites do not impose a duty on the ALJ to order a psychiatric evaluation of all claimants. Rather, the regulations only apply if the

available medical evidence is insufficient. See, e.g., 20 C.F.R. §§ 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."); 404.1517 (the ALJ "may" request a mental examination if medical sources cannot or will not give sufficient medical evidence about a claimant's impairment to determine whether she is disabled).

In this case, however, the record contains sufficient medical evidence concerning plaintiff's depression, and this evidence supports the ALJ's finding that plaintiff's depression did not result in work-related functional limitations. Among other things, plaintiff testified at the hearing that she took anti-depressants only briefly and that she no longer takes those medications. She also testified that she does not receive any mental health treatment and did not indicate that she had any functional limitations due to mental health problems. (R. at 22, 406-07.) The medical evidence also supports the ALJ's conclusion that plaintiff's depression was non-severe. (R. at 21-22.) Plaintiff's complaints of depression appear to have been brought on by stress relating to her father's diagnosis of terminal cancer. (R. 21.) Her primary care physician prescribed Zoloft, which plaintiff eventually discontinued. Id. Plaintiff also tried Wellbutrin briefly but voluntarily discontinued it. Id. Although the record contains multiple records from numerous physicians from whom plaintiff sought treatment, there is no evidence that plaintiff was ever treated by or sought treatment from a mental health professional or that her primary care doctor ever referred her for that kind of treatment. Because the medical evidence and plaintiff's own testimony supports the ALJ's decision that plaintiff did not suffer from a severe mental impairment, there was no reason for the ALJ to order a psychiatric consult.

The only record evidence plaintiff cites in support of her argument that a psychiatric consult was in order is the opinion of Dr. Yarboro, who performed a consultative examination of plaintiff in or around May 2002. (R. at 309-11.) This evidence is unpersuasive. Dr. Yarboro primarily performed a physical examination of plaintiff and merely opined in his conclusion that a psychiatric consult would be in order because plaintiff appeared to have some emotional problems which he thought "may" be aggravating her other complaints, particularly fatigue. (R. at 311.) This statement is simply insufficient to <u>require</u> the ALJ to order a psychiatric examination under the regulations. First, Dr. Yarboro was merely a consultative, not a treating, physician, and, therefore, his opinion is not controlling. Second, as set forth above, the ALJ did not err in discrediting Dr. Yarboro's conclusions. (R. at 28.) Finally, as set forth above, the record concerning plaintiff's mental health was more than sufficiently developed and, thus, a psychiatric consultation was not necessary. For all of the above reasons, the court finds no error on this issue.

### *Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court concludes that substantial evidence supports the ALJ's finding that the plaintiff is not disabled. The decision of the ALJ denying plaintiff's application for DIB is affirmed.

Therefore, plaintiff's motion for summary judgment (Docket No. 6) is **DENIED**, and defendant's motion for summary judgment (Docket No. 9) is **GRANTED**.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Michaeleen K. Miller.

The clerk shall mark this case as closed.

By the court:

/s/ Joy Flowers Conti<br>Joy Flowers Conti<br>United States District Judge

Dated:   January 13, 2006

cc: counsel of record